276 P.3d 645

**ALOHACARE, Petitioner/Plaintiff–Appellant,**

v.

**DEPARTMENT OF HUMAN SERVICES,**
State of Hawaiʻi, Respondent/Defendant–Appellee.

**No. SCWC–29630.**

Supreme Court of Hawaiʻi.

May 11, 2012.

As Corrected May 18, 2012.

Edward Kemper, for petitioner.

Lee-ann N.M. Brewer, deputy attorney general, for respondent.

ACOBA, DUFFY, and McKENNA, JJ.; with RECKTENWALD, C.J., dissenting, with whom NAKAYAMA, J., joins.

Opinion of the Court by ACOBA, J.

We hold (1) that Petitioner/Plaintiff–Appellant AlohaCare (Petitioner), a bidder for a health and human services contract under Hawai'i Revised Statutes (HRS) 103F, may not appeal the denial of a contract award by Respondent/Defendant–Appellee the Department of Human Services (Respondent) under the procedures set forth in HRS chapter

103D (pertaining generally to other State procurement contracts) that afford judicial review for bidders denied protests; (2) however, as construed, HRS chapter 103F does not prohibit judicial review of the administrative denial of such matters and review may be afforded under the declaratory judgment statute, HRS chapter 632. *See Alaka'i Na Keiki, Inc. v. Matayoshi*, 127 Hawai'i 263, 277 P.3d 988 (2012) (*Alaka'i II* ); (3) review and denial of a bidder's protest by Respondent as the purchasing agency and subsequent denial of a request for reconsideration by the chief procurement officer housed in a different executive agency do not assuage separation of powers concerns between the executive and judicial branches of government because review is accomplished only in the executive branch of government; and (4) Petitioner is not denied the constitutional rights of due process or equal protection by HRS chapter 103F, inasmuch as judicial review may be obtained by way of a declaratory judgment action.[1]

Applying the holding to this case, we vacate the August 12, 2011 judgment of the ICA and the January 8, 2009 judgment of the court. We remand this case to the court for disposition consistent with this opinion.

I.

In October 2007, Respondent issued a request for proposals (RFP) to solicit providers for QUEST Expanded Access (QExA) Managed Care Plans to eligible individuals who are aged, blind, and disabled. Petitioner submitted a proposal, but it was not one of the two health plans ultimately awarded a contract.[2]

On February 22, 2008, Petitioner lodged a protest with the Director of Respondent, the head of the purchasing agency described in HRS § 103F–501.[3] The protest generally alleged:

---

1. Petitioner seeks review of the August 12, 2011 judgment of the ICA filed pursuant to its July 29, 2011 Summary Disposition Order (SDO), affirming the Judgment and Order Dismissing AlohaCare's Appeal for Lack of Jurisdiction filed by the Circuit Court of the First Circuit (the court) on January 8, 2009. The SDO was filed by Presiding Judge Daniel R. Foley and Associate Judges Alexa D.M. Fujise and Katherine G. Leonard. The Honorable Eden E. Hifo presided at the court.

2. The essential matters following are from the record and the submissions of the parties.

3. HRS § 103F–501 (Supp.2007) provides in relevant part:

[§ 103F–501]. Protested awards. (a) *A person who is aggrieved by an award of a contract may protest a purchasing agency's failure to follow procedures established by this chapter, rules adopted by the policy board, or a request for*

(1) [Respondent] failed to properly review [Petitioner's] technical proposal;

(2) [Respondent] improperly utilized the technical proposals as basis to exclude [Petitioner] from further consideration;

(3) [Petitioner's] competitors are ineligible for Medicaid Managed Care Contracts;

(4) The treatment of [Petitioner] violated the terms of its settlement agreement with [Respondent]; [4]

(5) The terms of the RFP violated the rights of the Federally Qualified Health Centers that are members of [Petitioner] and made [Petitioner's] competitors ineligible for the award.

On March 12, 2008, the protest was denied. On March 19, 2008, pursuant to HRS § 103F–502, Petitioner requested reconsideration of the denial from the chief procurement officer of the State Procurement Office, of the Department of Accounting and General Services, another state agency.[5] On May 19, 2008, the chief procurement officer denied the request for reconsideration. HRS § 103F–502(d) states that the chief procurement officer's decision is "final and conclusive."

However, Petitioner then filed an appeal and request for hearing with the Department of Commerce and Consumer Affairs (DCCA) but under HRS chapter 103D, specifically HRS § 103D–709.[6] HRS § 103D–709 provides that a person aggrieved by determinations of the head of a purchasing agency, or

---

*proposals in selecting a provider and awarding a purchase of health and human services contract, provided the contract was awarded under section 103F–402 or 103F–403.* Amounts payable under a contract awarded under section 103F–402 or 103F–403, and all other awards of health and human services contracts may not be protested and shall be final and conclusive when made.
(Emphasis added.)

4. The terms of the settlement agreement, "guaranteed no less than equal treatment by [Respondent] as respects all other managed care entities." Petitioner "contends that the RFP method of treatment of the general excise and insurance premium taxes in evaluating business proposals, and the manner in which it was given 'adverse findings' in the scoring of its technical proposal, violated this 'equal treatment' requirement."

5. HRS § 103F–502 (Supp.2007) provides in relevant part:

[§ 103F–502]. **Right to request reconsideration.** (a) *A request for reconsideration of a decision of the head of the purchasing agency under section 103F–501 shall be submitted to the chief procurement officer* not later than five working days after the receipt of the written decision, and shall contain a specific statement of the factual and legal grounds upon which reversal or modification is sought. (b) *A request for reconsideration may be made only to correct a purchasing agency's failure to comply with section 103F–402 or 103F–403, rules adopted to implement the sections, or a request for proposal, if applicable.* (c) The chief procurement officer may uphold the previous decision of the head of the purchasing agency or reopen the protest as deemed appropriate. (d) *A decision under subsection (c) shall be final and conclusive.*
(Emphases added.)

6. HRS § 103D–709 (Supp.2007) provides in relevant part:

§ 103D–709. **Administrative proceedings for review.**
(a) The *several hearings officers* appointed by the director of the department of commerce and consumer affairs pursuant to section 26–9(f) *shall have jurisdiction to review and determine de novo, any request from any bidder, offeror, contractor, or person aggrieved under section 103D–106, or governmental body aggrieved by a determination of the chief procurement officer, head of a purchasing agency, or a designee of either officer under section 103D–310, 103D–701, or 103D–702.*
(b) Hearings to review and determine any request made pursuant to subsection (a) shall commence within twenty-one calendar days of receipt of the request. *The hearings officers shall have power to issue subpoenas, administer oaths, hear testimony, find facts, make conclusions of law, and issue a written decision not later than forty-five days from the receipt of the request under subsection (a), that shall be final and conclusive unless a person or governmental body adversely affected by the decision commences an appeal in the circuit court of the circuit where the case or controversy arises under section 103D–710.*
(c) *Only parties to the protest made and decided pursuant to sections 103D–701, 103D–709(a), 103D–310(b), and 103D–702(g) may initiate a proceeding under this section.* The party initiating the proceeding shall have the burden of proof, including the burden of producing evidence as well as the burden of persuasion. The degree or quantum of proof shall be a preponderance of the evidence. All parties to the proceeding shall be afforded an opportunity to present oral or documentary evidence, conduct cross-examination as may be required, and argument on all issues involved. Fact finding under section 91–10 shall apply.
(Emphases added.)

the chief procurement officer or their designees, may request a de novo hearing before a DCCA hearings officer to contest such determinations. DCCA filed a Motion to Dismiss for Lack of Jurisdiction. On July 16, 2008, the DCCA hearings officer granted the motion, essentially concluding that Petitioner was not a party to a protest made and decided under any provision of HRS chapter 103D and that therefore a DCCA hearings officer lacked jurisdiction to hear Petitioner's appeal stemming from HRS chapter 103F.

7. HRS § 103D–710 (Supp.2007) provides:

§ **103D–710. Judicial review.** (a) *Only parties to proceedings under section 103D–709 who are aggrieved by a final decision of a hearings officer under that section may apply for judicial review of that decision. The proceedings for review shall be instituted in the circuit court of the circuit where the case or controversy arises.*
(e) Upon review of the record *the circuit court may affirm the decision of the hearings officer issued pursuant to section 103D–709 or remand the case with instructions for further proceedings;* or it may reverse or modify the decision and order if substantial rights may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the chief procurement officer or head of the purchasing agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
(Emphases added.)

8. HRS § 632–1 (1997) provides:

§ **632–1. Jurisdiction; controversies subject to.** *In cases of actual controversy, courts of record, within the scope of their respective jurisdictions, shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed, and no action or proceeding shall be open to objection on the ground that a judgment or order merely declaratory of right is prayed for*
. . . .
Relief by declaratory judgment may be granted in civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and·inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status,

Petitioner then appealed to the court under HRS § 103D–710, which permits judicial review of a hearings officer's decision under HRS § 103D–709,[7] HRS § 632–1, the declaratory judgment statute,[8] and Hawai'i Rule of Civil Procedure 72(a), that grants circuit courts jurisdiction of appeals allowed by statute.[9] Petitioner requested the court find that "the DCCA has jurisdiction based on various sections of the Hawai'i Revised Statutes, including but not limited to, sections 91–14, 103F–501, 103F–502, 103D–203,[10] and

right, or privilege in which the party has a concrete interest and that there is a challenge or denial of the asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding. *Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed; but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, a remedy equitable in nature, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment in any case where the other essentials to such relief are present.*
(Emphases added.)

9. Hawai'i Rule of Civil Procedure 72(a) provides:

(a) How taken. *Where a right of redetermination or review in a circuit court is allowed by statute, any person adversely affected by the decision, order or action of a governmental official or body other than a court, may appeal from such decision,* order or action by filing a notice of appeal in the circuit court having jurisdiction of the matter. . . .
(Emphasis added.)

10. HRS § 103D–203 (Supp.2007) provides in relevant part:

§ **103D–203. Chief procurement officers,** (a) The chief procurement officer for each of the following state entities shall be:
(1) The judiciary—the administrative director of the courts;
(2) The senate—the president of the senate;
(3) The house of representatives—the speaker of the house of representatives;
(4) The office of Hawaiian affairs—the chairperson of the board;
(5) The University of Hawaii—the president of the University of Hawaii;
(6) The department of education, excluding the Hawaii public library system—the superintendent of education;

103D–709." Petitioner also sought a declaratory judgment under HRS § 632–1 declaring that HRS § 103F–504,[11] the "exclusivity of remedies" provision, was invalid or unconstitutional to the extent it precluded judicial review of protest decisions. Petitioner asked the court for orders "reversing the decision of the Hearings Officer and declaring that the DCCA has jurisdiction over AlohaCare's appeal," "declaring that HRS 103F–504 [is] invalid or unconstitutional to the extent it purports to preclude review of the Executive Branch's decision," and granting "such other relief as the Court deems just and reasonable."

Respondent filed a Motion to Dismiss in the court, claiming that there was no judicial review of the executive branch's decision on the bid protest. Respondent contended that (1) Petitioner had no statutory right to appeal; (2) HRS chapter 91 jurisdiction was limited to appeals from "contested cases"; (3) Hawai'i statutes regarding health and human services procurements did not require a contested case hearing; (4) Petitioner had no constitutional right to a contested case hearing on due process grounds; and (5) HRS § 103F–504 was constitutional. The court granted Respondent's motion on the basis that it lacked subject matter jurisdiction under Hawai'i Rules of Civil Procedure Rule 72(a) and entered judgment on January 8, 2009. Citing *Alaka'i Na Keiki, Inc. v. Hamamoto*, 125 Hawai'i 200, 257 P.3d 213 (App.2011) (*Alaka'i I*), the ICA essentially determined that Petitioner was not entitled to judicial review and affirmed the court's judgment for lack of jurisdiction. *AlohaCare v. Dep't of Human Servs.*, No. 29630, 2011 WL 3250430 (App. July 28, 2011).[12]

(7) The Hawaii health systems corporation—the chief executive officer of the Hawaii health systems corporation; and

(8) *[For][t]he remaining departments of the executive branch of the State and all governmental bodies administratively attached to them—the administrator of the state procurement office of the department of accounting and general services.*

(Emphasis added.)

11. HRS § 103F–504 (Supp.2007) provides:

[§ 103F–504.] **Exclusivity of remedies.** The procedures and remedies provided for in this part, and the rules adopted by the policy board, *shall be the exclusive means available for persons aggrieved in connection with the award of a contract to resolve their concerns.* (Emphasis added.)

## II.

In its Application for Writ of Certiorari (Application), Petitioner presents the following questions:

1. Whether the procurement statutory scheme as outlined in chapters 103F and 103D HRS permit judicial review of the [e]xecutive [b]ranch decision regarding a health procurement bid?

2. Whether the denial of judicial review of the [e]xecutive [b]ranch decision regarding a health procurement bid was unconstitutional pursuant to the Hawai'i Constitution [a]rticle VI, section 1 which grants judicial powers to the courts?

3. Whether the denial of judicial review of the [e]xecutive [b]ranch decision regarding a health procurement bid was unconstitutional pursuant to the Hawai'i Constitution, [a]rticle I, section 5 which guarantees due process and equal protection of the laws?

## III.

### A.

Regarding the first question, Petitioner argues that, read together, HRS chapters 103F and 103D permit judicial review of the agency's decision. Petitioner contends HRS chapter 103F allows a dissatisfied bidder to file a protest with the head of the purchasing agency under HRS § 103F–501, from which either party can appeal for reconsideration to the chief procurement officer under HRS § 103F–102. At that point, Petitioner claims, the parties are "sent" by HRS § 103F–102 [13] to HRS chapter 103D, which contains the definition of chief procurement officer, *see* HRS § 103D–203. From this

12. The record does not indicate whether the contracts in issue have been completed. In the event the contracts have expired, there is no live controversy. However, the instant case falls within an exception to the mootness doctrine because it " 'involv[es] a legal issue which is capable of repetition, yet evading review[,]' ... inasmuch as the State will continue to award health and human services contracts ... [but by] the time the issue reaches this court, the contracts will most often have been awarded and fully executed[.]" *Alaka'i II*, 127 Haw. at ——, n. 19, 277 P.3d at 995 n. 19 (quoting *Kona Old Hawaiian Trails Group v. Lyman*, 69 Haw. 81, 87, 734 P.2d 161, 165 (1987)).

13. HRS § 103F–102 (Supp.2007) provides in relevant part:

provision defining the chief procurement officer, Petitioner asserts the parties are then "sent" to HRS § 103D–709, which grants DCCA hearings officers jurisdiction to review the decision of any chief procurement officer. Although Petitioner does not say so expressly, the implication of its argument is that it is entitled to a full hearing before a hearings officer under HRS § 103D–709. Petitioner contends that HRS § 103D–701 [14] and HRS § 103D–710 empower the circuit court to review the decision of the hearings officer. According to Petitioner, a contrary interpretation would raise due process concerns; and lead to the "absurd" result that there would be a right to judicial review generally for procurement contracts under chapter 103D, but not for health and human services procurement contracts governed by chapter 103F.

### B.

Respondent answers first that Petitioner has no right to appeal under HRS chapter

[§ 103F–102.] **Definitions.** As used in this chapter, unless the context clearly requires otherwise:
"Chief procurement officer" means *those officials designated by section 103D–203.*
(Emphasis added.)

14. HRS § 103D–701 (Supp.2007) provides in relevant part:
[§ 103D–701.] **Authority to resolve protested solicitations and awards.** (a) *Any actual or prospective bidder, offeror, or contractor who is aggrieved in connection with the solicitation or award of a contract may protest to the chief procurement officer* or a designee as specified in the solicitation. Except as provided in sections 103D–303 and 103D–304, a protest shall be submitted in writing within five working days after the aggrieved person knows or should have known of the facts giving rise thereto; provided that a protest of an award or proposed award shall in any event be submitted in writing within five working days after the posting of award of the contract under section 103D–302 or 103D–303, if no request for debriefing has been made, as applicable; provided further that no protest based upon the content of the solicitation shall be considered unless it is submitted in writing prior to the date set for the receipt of offers.
(b) The chief procurement officer or a designee, prior to the commencement of an administrative proceeding under section 103D–709 or *an action in court* pursuant to section 103D–710, may settle and resolve a protest concerning the solicitation or award of a contract. This authority shall be exercised in ac-

91, and specifically under HRS § 91–14(a) [15], because chapter 103F does not require a "contested case" hearing, and therefore there is no chapter 91 jurisdiction.[16]

Second, Respondent argues that the legal remedies available under HRS chapter 103D, including judicial review, do not apply to HRS chapter 103F health and human services procurement contracts. Respondent maintains that HRS § 103F–104 [17] states that contracts to purchase health and human services are exempt from the requirements of HRS chapter 103D, "unless a provision of [chapter 103F] imposes a requirement of chapter 103D on the contract or purchase," *see* HRS § 103F–104. According to Respondent, nothing in the definition of "chief procurement officer," HRS § 103F–102, "imposes a requirement of HRS chapter 103D on the contract or purchase," HRS § 103F–104, in order for HRS chapter 103D to apply to HRS chapter 103F health and human services contracts.

cordance with rules adopted by the policy board.
(Emphases added.)

15. HRS § 91–14(a) (1997) provides:
§ 91–14. **Judicial review of contested cases.**
(a) Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter; but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law. Notwithstanding any other provision of this chapter to the contrary, for the purposes of this section, the term "person aggrieved" shall include an agency that is a party to a contested case proceeding before that agency or another agency.

16. Petitioner, however, did not claim in its Application that HRS chapter 91 was a basis for jurisdiction.

17. HRS § 103F–104 provides:
[§ 103F–104.] **Exemption from chapter 103D.** Contracts to purchase health and human services required to be awarded pursuant to this chapter *shall be exempt from the requirements of chapter 103D, unless a provision of this chapter imposes a requirement of chapter 103D on the contract or purchase.*
(Emphasis added.)

Assuming that the definition of chief procurement officer invoked HRS chapter 103D legal remedies, Respondent asserts that the only parties who may initiate administrative review under HRS § 103D–709 are the "parties to the protest made and decided pursuant to [ ] sections ... [103D–701, 103D–709(a), 103D–310(b),[18] and 103D–702(g)[19]]." Respondent points out that Petitioner was not a party to any protest made under any of those sections, and thus cannot invoke HRS § 103D–709, which permits DCCA hearings officers to review "any request from any bidder ... aggrieved by a determination of the chief procurement officer." Finally, Respondent argues that to incorporate the legal remedies of HRS chapter 103D into HRS chapter 103F would be inconsistent with the legislature's intent to create a separate and more streamlined process for procuring health and human services.

### C.

Regarding the second question, Petitioner urges that to the extent HRS chapter 103F prohibits judicial review of executive branch decisions, it is unconstitutional. Petitioner cites article VI, section 1 of the Hawai'i Constitution,[20] which vests the judicial power of the State in the courts; this court's statement in *HOH Corp. v. Motor Vehicle Licensing Bd.*, 69 Haw. 135, 143, 736 P.2d 1271, 1276 (1987), that "[t]he administrative agency is not empowered to pass on the validity of

the statute; nor is it qualified to pass on ... the propriety of its own action"; and *Carl Corp. v. Dep't of Edu.*, 85 Hawai'i 431, 455, 946 P.2d 1, 25 (1997), which, according to Petitioner, held that it would be "absurd" to conclude that a hearings officer was the only one with jurisdiction to determine whether a purchasing agency awarded a contract in violation of the law.

Respondent rejoins that the legislature has removed disputes involving the award of HRS chapter 103F procurement contracts from the jurisdiction of the courts; that this court may not override that decision because the legislature, not the courts, define the jurisdiction of the circuit courts; and that Petitioner cannot rely on cases such as *HOH*, 69 Haw. at 143, 736 P.2d at 1272, and *Carl Corp.*, 85 Hawai'i at 455, 946 P.2d at 25, that have concluded that agencies are not empowered to review their *own* actions, because the chief procurement officer is from a state agency, separate from Respondent, and no principle bars one agency from reviewing the decisions of another agency, such as Respondent.

### D.

Regarding the third question, Petitioner maintains that the lack of judicial review under HRS chapter 103F violates the equal protection guarantee of article I, section 5 of the Hawai'i Constitution[21] in that there is no

18. HRS § 103D–310(b) (Supp.2001) provides in relevant part:

> Whether or not an intention to bid is required, the procurement officer shall determine whether the prospective offeror has the financial ability, resources, skills, capability, and business integrity necessary to perform the work. For this purpose, the officer, in the officer's discretion, may require any prospective offeror to submit answers, under oath, to questions ... prepared by the policy board.... Whenever it appears ... that the prospective offeror is not fully qualified and able to perform the intended work, a written determination of nonresponsibility of an offeror shall be made by the head of the purchasing agency, in accordance with rules adopted by the policy board. The decision of the head of the purchasing agency shall be final unless the offeror applies for administrative review pursuant to section 103D–709.

19. HRS § 103D–702(g) (Supp.2005) provides that "[t]he policy board shall adopt such other

> rules as may be necessary to ensure that the proceedings conducted pursuant to this section afford all parties an opportunity to be heard."

20. Haw. Const. art. VI, § 1 provides:

> **Section 1.** The judicial power of the State shall be vested in one supreme court, one intermediate appellate court, circuit courts, district courts and in such other courts as the legislature may from time to time establish. The several courts shall have original and appellate jurisdiction as provided by law and shall establish time limits for disposition of cases in accordance with their rules.

21. Haw. Const. art. VI, § 5 provides:

> **Section 5.** No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.

rational basis for allowing judicial review of other procurement contracts under HRS chapter 103D but prohibiting such review of health and human services procurement contracts under HRS chapter 103F. Petitioner does not make any argument concerning due process with respect to the third question.

In response, Respondent declares that there is no equal protection violation because there is a rational basis for excluding judicial review under HRS chapter 103F, inasmuch the legislature intended a "simpler, standardized process for the purchase of health and human services, that was by design separate and distinct from the public procurement code in HRS chapter 103D." Respondent also asserts that there is no due process violation because Petitioner lacks any property interest in the expectation that it might be awarded a procurement contract. Further, Respondent maintains that even if a property interest existed, Petitioner received all of the process that was due to it because Petitioner received notice and an opportunity to be heard on its protest before the purchasing agency and the chief procurement officer.

### E.

Relying on its opinion in *Alaka'i I,* the ICA concluded that (1) HRS chapter 103F does not allow for judicial review of agency decisions; (2) the absence of judicial review does not violate article VI, section 1 of the Hawai'i Constitution; and (3) HRS chapter 103F did not raise any due process or equal protection concerns. *AlohaCare,* 2011 WL 3250430 at *1.[22] *Id.*

### IV.

■■■ With respect to Petitioner's first question, Petitioner argues that, read together, HRS chapter 103F and HRS chapter 103D permit it to seek judicial review of the chief procurement officer's decision. "[T]he fundamental starting point for statutory interpretation is the language of the statute itself." *Flores v. Rawlings Co., LLC,* 117 Hawai'i 153, 158, 177 P.3d 341, 346 (2008) (citing *Peterson v. Hawai'i Elec. Light Co., Inc.,* 85 Hawai'i 322, 327–28, 944 P.2d 1265,

1270–71 (1997)). However, the statutory text does not support Petitioner's contention.

As observed, HRS § 103F–104 provides that contracts to purchase health and human services "shall be exempt from the requirements of chapter 103D, unless a provision of [chapter 103F] imposes a requirement of chapter 103D on the contract or purchase." Petitioner agrees that it was bidding for a contract involving the purchase of health and human services, and therefore HRS § 103F–104 applies.

But Petitioner contends, in essence, that because HRS chapter 103F looks to HRS chapter 103D for the definition of "chief procurement officer," and HRS § 103D–709(a) confers jurisdiction upon hearings officers to review the decisions of chief procurement officers, Petitioner has the right to appeal to a hearings officer from the adverse decision of the chief procurement officer. In turn, Petitioner maintains that because the decisions of hearings officers are reviewable by the circuit courts under HRS § 103D–701 and HRS § 103D–710, judicial review is available to Petitioner.

However, HRS chapter 103D does not apply to health and human services procurement contracts unless a specific provision of HRS chapter 103F "imposes a requirement" of HRS chapter 103D on the contract. *See* HRS § 103F–104. HRS § 103F–501 allows a protest to be filed with the head of the purchasing agency, and HRS § 103F–502 permits an appeal to the chief procurement officer. The definition of chief procurement officer is located in HRS § 103F–102, which as noted before refers to HRS § 103D–203 for the definition of that term. But the mere fact that HRS § 103F–103 references HRS § 103D–203 for the definition of chief procurement officer does not mean that HRS § 103F–103 "imposes a requirement" of HRS chapter 103D on HRS chapter 103F contracts.

There is nothing in the form of a "requirement" on HRS chapter 103F health and human services contracts in HRS § 103D–203, which defines "chief procurement officer."

---

22. Petitioner did not argue to the ICA that it was entitled to appeal pursuant to HRS chapter 91.

As noted, *supra,* Petitioner does not make that argument in its Application either.

As said, the relevant provision designates the "chief procurement officer" as being "the administrator of the state procurement office of the department of accounting and general services." HRS § 103D–203(a)(8). It does not "require" that person to engage in any particular conduct. The pertinent "requirement" is located, not in HRS chapter 103D, but in HRS § 103F–502, which confers jurisdiction upon the chief procurement officer to review decisions of the purchasing agency. Thus, HRS § 103F–103 does not appear to impose any "requirement" of HRS chapter 103D on HRS chapter 103F health and human services contracts, except to "require" that the "chief procurement officer" be the same official under both HRS chapter 103D and HRS chapter 103F.

Moreover, as Respondent argues, HRS § 103D–709(c) states that "only parties to a protest made and decided pursuant to sections 103D–701, 103D–709(a), 103D–310(b), and 103D–702(f) may initiate a proceeding under this section." Under the express terms of HRS § 103D–709(c), Petitioner cannot seek review of the chief procurement officer's decision on an HRS chapter 103F health and human services contract pursuant to HRS chapter 103D unless the protest was decided under one of the sections listed in HRS § 103D–709(c). Petitioner does not contend that the chief procurement officer made a decision pursuant to any of those statutory provisions. Rather, Petitioner relates that it filed a protest with the head of the purchasing agency, and then with the chief procurement officer, under HRS § 103F–501 and HRS § 103F–502. HRS § 103D–709(c) thus forecloses Petitioner from seeking review of the chief procurement officer's decision made pursuant to HRS § 103F–501 under the procedures of HRS § 103D–709.

Petitioner nevertheless contends that judicial review of chapter 103F contracts must be afforded because it would be "absurd" to except health and human services contracts, when review is available under HRS chapter 103D for other procurement contracts. But no "absurdity" would follow inasmuch, as explained *infra*, judicial review is not foreclosed by HRS chapter 103F.[23]

## V.

■ With respect to the second question, Petitioner urges that "to the extent that [HRS c]hapter 103F restricts review of the executive branch by executive branch officials, it is unconstitutional." Petitioner refers to the ICA's conclusion that HRS "[c]hapter 103F does not allow for judicial review" because HRS § 103F–504 states that the protest procedure "shall be the *exclusive means* available for persons aggrieved … to resolve their concerns[.]" *Alaka'i Na Keiki, Inc.*, 125 Hawai'i at 206–07, 257 P.3d at 219–20 (emphasis added). Petitioner reasons that if HRS § 103F–504 bars judicial review, it is unconstitutional because, "[a]fter all, the judicial power" is vested on the courts by article VI, section I of the Hawai'i Constitution. According to Petitioner, HRS chapter 103F is invalid because "it empowers the [e]xecutive [b]ranch to determine the propriety and legality of its own procurement actions as a final decision without review from any other [b]ranch of government."

■ In making this claim, Petitioner is, in essence, invoking the separation of powers doctrine. The separation of powers doctrine is intended "to preclude a commingling of … essentially different powers of government in the same hands and thereby prevent a situation where one department would be controlled by, or subjected, directly or indirectly, to, the coercive influence of either of the other departments." *Pray v. Judicial Selection Comm'n of State*, 75 Haw. 333, 353, 861 P.2d 723, 732 (1993) (internal quotation marks and citation omitted).

Petitioner advances arguments similar to those made by the petitioner in *Alaka'i II.* Briefly, Petitioner asserts that chapter 103F vests the judicial power constitutionally re-

---

**23.** Although Petitioner appears to have abandoned the claim that it may seek judicial review under HRS § 91–14(a), *see AlohaCare*, 2011 WL 3250430 at *1, Respondent argues that Petitioner is not entitled to review under HRS § 91–14(a). But since Petitioner did not maintain in its Appli-

cation that it was entitled to review under HRS § 91–14(a), we do not consider that issue. *See E & J Lounge Operating Co., Inc. v. Liquor Comm'n of the City and Cty. of Honolulu*, 118 Hawai'i 320, 347, 189 P.3d 432, 459 (2008).

served for the courts in an executive agency, shielding the decisions of the agency from review. Respondent and the ICA respond that because the legislature has the power to establish the subject matter jurisdiction of the courts and to create or to deny appellate review, the legislature's alleged prohibition of judicial review under HRS chapter 103F *per se* cannot present a separation of powers issue. *See AlohaCare*, 2011 WL 3250430 at *1 (citing *Alaka'i Na Keiki, Inc.*, 125 Hawai'i at 206–07, 257 P.3d at 219–220).

However, in *Alaka'i II* we said that "subject matter jurisdiction is not determinative of whether a legislative act that delegates judicial power to an agency violates the separation of powers doctrine or not." *Alaka'i II*, 127 Haw. at 275, 277 P.3d at 1000 (footnote omitted). Indeed, separation of powers concerns may arise when the legislature vests administrative agencies with judicial power but precludes judicial review of the agency's decisions. *Id.* 127 Haw. at 275–76, 277 P.3d at 1000–01. Absent judicial review, the agency is left to decide the legality of its own actions, meaning that there is no "check" on the propriety of the agency's actions under the law. *See McHugh v. Santa Monica Rent Control Bd.*, 49 Cal.3d 348, 261 Cal.Rptr. 318, 777 P.2d 91, 102 (1989) (explaining that delegation of judicial power to administrative agencies is acceptable so long as there is judicial review of the agency's decisions operating as a "check" on the agency's exercise of that power); *see also F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 129 S.Ct. 1800, 1823, 173 L.Ed.2d 738 (Kennedy, J., concurring) ("If agencies were permitted unbridled discretion, their actions might violate important constitutional principles of separation of powers and checks and balances."). Consequently, "if the legislature delegates judicial power to an administrative agency and precludes judicial review of the legality of the agency's own actions, a separation of powers issue would arise." *See Alaka'i II*, 127 Haw. at 277, 277 P.3d at 1002.

## VI.

Respondent argues, that because the head of the purchasing agency and the chief procurement officer belong to different agencies,

disallowing judicial review does not raise separation of powers concerns. Respondent recognizes that in *HOH*, 69 Haw. at 143, 736 P.2d at 1276, this court explained that an administrative agency was not "empowered to pass on the validity of the statute; nor is it qualified to pass on the propriety of its own action," and that in *Carl Corp.*, 85 Hawai'i at 455, 946 P.2d at 25, this court held that it would be "absurd" to allow a hearings officer to determine the legality of his own actions. However, Respondent explains that those cases are distinguishable because, here, the purchasing agency is not deciding on the legality of its own actions. According to Respondent, since a request for reconsideration is made to the chief procurement officer and that person is the administrator of the State Procurement Office, *see* HRS § 103D–203, a different agency decided the validity of Respondent's actions.

Respondent's argument overlooks that the doctrine of separation of powers is derived from the distribution of power among the three *branches* of government. *Cf. Clinton v. Jones*, 520 U.S. 681, 691, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) ("[T]he doctrine of separation of powers . . . restrains each of the three branches of the Federal Government from encroaching on the domain of the other two[.]"); *see also Hawaii Insurers Council v. Lingle*, 120 Hawai'i 51, 69, 201 P.3d 564, 582 (2008) (explaining that the separation of powers doctrine preserves the checks and balances of our system of government where "sovereign power is divided and allocated among three co-equal branches"). According to Respondent, the procedures in place empower one agency of the executive branch, in this case, the State Procurement Office of the Department of Accounting and General Services, to decide the legality of the actions of another executive branch agency, in this case, Respondent, without permitting judicial review.[24] However, if the premise underlying the separation of powers doctrine is that one branch should not encroach upon the domain of another, Respondent's argument allows the executive branch to exercise unchecked judicial power, and hence does not

---

24. Both DHS and the State Procurement Office of the Department of Accounting and General Services are executive agencies. *See Guide to*

*Government in Hawai'i,* Legislative Reference Bureau, 11 (December 2007), http://hawaii.gov/lrb/gd/gdgovhi.pdf.

mitigate separation of powers concerns. Thus, Respondent's contention that there is no separation of powers issue because an executive agency reviews the decision of an executive purchasing agency is incorrect.

## VII.

As indicated in *Alaka'i II*, the legislature vested the purchasing agency and the chief procurement officer with judicial power, to the extent HRS chapter 103F delegates to the purchasing agency and to the chief procurement officer the authority to interpret and apply HRS chapter 103F and to determine the legality of the agency's actions in disputes with protesting parties. *Alaka'i II*, 127 Haw. at 277–78, 277 P.3d at 1002–03.

 In this regard, the Hawai'i Constitution vests judicial power in the courts. Hawai'i Const. art. VI, § 1. Under such power, "this court is the ultimate interpreter of [the Hawai'i] [C]onstitution, *Bani*, 97 Hawai'i at 291 n. 4, 36 P.3d at 1261 n. 4, [and] this court is [also] the final arbiter of [Hawai'i] statutory law." *Alaka'i II*, 127 Haw. at 278, 277 P.3d at 1003. Also, "[t]he state courts are the final arbiters of the State's own law." *Id.* (Citing *Rana v. Bishop Ins. of Hawaii, Inc.*, 6 Haw.App. 1, 10, 713 P.2d 1363, 1369 (App.1985)) (Brackets, quotation marks, and citation omitted.). Moreover "[t]he quintessential power of the judiciary is the power to make *final* determinations of questions of law[.]" *Id.* (Quoting *Asbury v. Lombardi*, 846 S.W.2d 196, 200 (Mo.1993) (other citations omitted)).

HRS § 103F–501 allows a person aggrieved by an award of a contract to "protest a purchasing agency's failure to follow procedures established by [HRS chapter 103F], rules adopted by the policy board, or a request for proposals in selecting a provider and awarding a purchase of health and human services contract[.]" HRS § 103F–501(a). Petitioner filed a protest of the contract awards pursuant to HRS § 103F–501, that alleged matters generally falling within the aforesaid areas, *see supra*. Consequently, insofar as the purchasing agency is charged with determining whether it failed to "follow procedures established by [HRS § 103F–501,]" "rules ... [ ] of the policy board" or the RFP, HRS § 103F–501(a), and the chief procurement officer determines whether the purchasing agency "fail[ed] to

comply with section 103F–402 or 103F–403[,]" both perform a judicial function.

## VIII.

### A.

Having concluded that DHS and the chief procurement officer have been vested with judicial power, it must be determined whether decisions made by the purchasing agency in exercising adjudicatory power are subject to judicial review. In *Alaka'i II*, this court indicated there would be presumptive judicial review of such administrative action:

> This court has said that, 'there is a policy favoring judicial review of administrative actions.' *In re Matter of Hawaii Government Employees' Ass'n, Local 152, AFSCME, AFL–CIO*, 63 Haw. 85, 87, 621 P.2d 361, 363 (1980) (*HGEA*); *accord Ariyoshi v. Haw. Pub. Emp't Relations Bd.*, 5 Haw.App. 533, 538, 704 P.2d 917, 923 (App. 1985). In that regard, a civil complaint, such as the one filed by Petitioner, ostensibly falls within the prescribed jurisdiction of our courts. In *Sherman [v. Sawyer]*, 63 Haw. [55], at 58, 621 P.2d [346], at 349 [ (1980) ], this court explained that the legislature established the subject matter jurisdiction of the courts in enacting HRS § 603–21.5 and HRS § 633–27. HRS § 603–21.5 (Supp.2005) provides in pertinent part that the several circuit courts shall have jurisdiction, 'except as otherwise expressly provided by statute,' of '[c]ivil actions and proceedings[.]'

> According to *Sherman,* 'the circuit court has jurisdiction over all civil causes of action unless precluded by the State Constitution or by statute.' 63 Haw. at 58, 621 P.2d at 349. Thus, the courts have subject matter jurisdiction over 'civil actions and proceedings[,]' and it is presumed that the courts have jurisdiction, unless the legislature, 'expressly[,]' provides otherwise by statute. HRS § 603–21.5.

*Alaka'i II*, 127 Haw. at 279, 277 P.3d at 1004 (footnote omitted).

### B.

 It must be decided, however, whether HRS chapter 103F divests circuit courts of jurisdiction over appeals from an

agency decision under HRS chapter 103F. To reiterate, HRS § 103F–502(c) provides that the decision of the chief procurement officer is to be "final and conclusive." HRS § 103F–504 states that, "[t]he procedures and remedies provided for in this part, and the rules adopted by the policy board, shall be the exclusive means available for persons aggrieved in connection with the award of a contract to resolve their concerns." Regarding these same provisions, we said in *Alaka'i II* that (1) "the "final and conclusive' language in HRS § 103F–502(d) would not appear to decisively absolve the purchasing agency's decision under HRS chapter 103F from judicial review[,]" (2) "the exclusivity of remedy provision [in HRS § 103F–504] would not compel the conclusion that judicial review was abrogated[,]" and (3) "the legislative intent that 'all persons who apply to . . . provide [health] and human services" be afforded 'fair and equitable treatment' would countenance against an intent to vest the purchasing agency with final, unreviewable decision making power in its own disputes, with a person who applied to provide services." *Alaka'i II*, 127 Haw. at 279–81, 277 P.3d at 1004–06. We concluded that "judicial review would not be prohibited by HRS §§ 103F–501 [and] 103F–504." *Id.* at 37–38. Thus, judicial review of HRS chapter 103F is not prohibited.[25]

## IX.

In *Alaka'i II*, we noted that the argument could be made that,

unlike HRS chapter 103D, HRS chapter 103F does not delineate the nature of judicial review available. It may be argued that the fact that HRS chapter 103D expressly provides for judicial review while HRS chapter 103F does not, suggests that the legislature intended to preclude judicial review under HRS chapter 103F.

*Id.* 127 Haw. at 283, 277 P.3d at 1008. However, as set forth in *Alaka'i II*, countervailing factors indicate judicial review is not prohibited. Thus, judicial review would be consistent with the legislative intent to provide a "standardized process" that would ensure the "fair and equitable treatment of all persons who apply to, . . . provide those services on the agencies behalf[.]"[26] *Alaka'i II*, 127 Haw. at 280, 277 P.3d at 1005 (quoting 1997 Haw Sess. Laws Act 190, § 1 at 351). Accordingly, "after the procurement decision is 'final' and not subject to further review by the administrative officer, the protesting party should be able to maintain a declaratory judgment action in the circuit court to contest the decision." *Id.* 127 Haw. at 284, 277 P.3d at 1009.

HRS § 632–1 provides that declaratory judgment relief may be granted "where the court is satisfied that antagonistic claims are present between the parties involved[.]" Petitioner sought a declaratory judgment against Respondent because there were "antagonistic claims" between Petitioner and Respondent concerning the process of awarding the contracts at issue. We have held that, "judicial review should be available . . . by way of declaratory action pursuant to

---

**25.** As noted in *Alaka'i II*, "the existence, structure, and composition of our judiciary is established by the Hawai'i Constitution and cannot be altered by the legislature. This indicates that the power to administer justice and adjudicate disputes that is conferred upon the courts is presumed and will be available to the people of the state. . . . Inherent in that power is, by corollary, that parties should have appropriate access to the courts of this state in resolving disputes." *Alaka'i II*, 127 Haw. at 283, 277 P.3d at 1008.

**26.** In fact, barring the chief procurement officer's decisions from judicial review may lead to less fairness and less accountability, contrary to the legislature's intent in enacting HRS chapter 103F. *See, e.g., Carl Corp.*, 85 Hawai'i at 455, 946 P.2d at 25 (noting the "absurd[ity]" of allowing agency officer to decide legality of his own actions); *Kadia v. Gonzales*, 501 F.3d 817, 819 (7th Cir.2007) (explaining in the immigration context

that judicial review often rectifies agency error); Ronald M. Levin, *Administrative Discretion, Judicial Review, and the Gloomy World of Judge Smith*, 1986 Duke L.J. 258, 271 (1986) ("Judicial review [of agency action] for errors of law promotes accountability by enforcing statutes that are themselves the products of a majoritarian process."); Cass R. Sunstein, *Reviewing Agency Inaction After Heckler v. Chaney*, 52 U. Chi. L.Rev. 653, 668 (1985) (contending that the purpose of judicial review under the Administrative Procedure Act "is to ensure governmental conformity with legal requirements"); Victor M. Hansen & Lawrence Friedman, *The Case for Congress: Separation of Powers and the War on Terror* 18–19 (arguing that adherence to the "default arrangement of separation of powers and checks and balances" prevents tyranny, promotes accountability, and improves decision making).

HRS § 632–1." *Alaka'i II*, 127 Haw. at 284, 277 P.3d at 1009. Consequently, Petitioner would be able to sue to enforce HRS chapter 103F under the declaratory judgment statute.

As discussed, nothing in HRS chapter 103F expressly precludes judicial review.[27] The statute, hence, does not give rise to a separation of powers issue. *See* discussion *supra.* In sum, judicial review is available in connection with HRS chapter 103F by way of a declaratory action under HRS § 632–1. Therefore, Petitioner's second question, whether HRS chapter 103F prohibits judicial review violating the separation of powers doctrine, is answered in the negative.

## X.

█ Regarding the third question, Petitioner contends that the lack of judicial review in HRS chapter 103F violates due process and equal protection. Petitioner, however, makes no argument in his Application regarding due process. In any event, it would appear that Petitioner has no legitimate claim of entitlement to being awarded a contract, and therefore it does not have a "property interest" that would serve to trigger due process protections. *See, e.g., International Brotherhood of Painters & Allied Trades v. Befitel,* 104 Hawai'i 275, 283, 88 P.3d 647, 655 (apprentices' interest in limiting number of authorized apprenticeship programs was not sufficient to establish property interest); *see also AlohaCare v. State of Hawaii, Dept. of Human Servs.,* 572 F.3d 740, 745 (9th Cir. 2009) (AlohaCare did not have a property interest in contract eligibility under federal regulations).

█ Petitioner also contends that the lack of judicial review under chapter 103F violates its right to equal protection. An equal protection inquiry begins by ascertaining the standard of review. *See Sandy Beach Defense Fund v. City Council of City and County of Honolulu,* 70 Haw. 361, 380, 773 P.2d 250, 262 (1989) (ascertaining standard of review before inquiring whether equal protection was violated). Unless fundamental rights or suspect classifications are implicated, the standard of review utilized in examining a denial of equal protection claim is the rational basis standard. *Id.*

█ Petitioner is not a member of a suspect class and does not contend that there is a fundamental right at stake in this case. To prevail under the rational basis standard, Petitioner must show "with convincing clarity" that the legislature's classification is not rationally related to the purpose of the challenged statute, or that the challenged classification does not rest upon some ground of difference having a fair and substantial relation to the object of the legislation, and is therefore arbitrary and capricious. *Sandy Beach,* 70 Haw. at 380, 773 P.2d at 262.

Whether there is a rational basis for disallowing judicial review under chapter 103F is debatable. On the one hand, Respondent contends that the purpose of HRS chapter 103F was to create a more streamlined process for the purchase of health and human services. According to Respondent, allowing only two levels of review by executive agencies serves that purpose. On the other hand, the goal of the statute was also to provide a fair process for persons applying for and providing services under health and human services procurement contracts. *See, e.g.,* 1997 Haw Sess. Laws Act 190, § 1 at 351 (stating that a "simpler, standardized process" would ensure the "fair and equitable treatment of all persons who apply to, and are paid to provide those services on the agencies' behalf". and to "optimize information-sharing, planning, and service delivery efforts"). If the legislature was attempting to create a "fairer" process and to ensure "equitable treatment" for those who apply for HRS chapter 103F contracts, then it would appear that there is no rational basis for precluding judicial review. However, this question is moot inasmuch as HRS chapter

---

**27.** There is no conflict in concluding that judicial review is available under HRS § 632–1. As explained, *supra,* there is specific language in HRS chapter 103F stating that HRS chapter 103D does not apply to HRS chapter 103F health and human services procurement contracts. HRS § 103F–104. Necessarily, that means that the judicial review provision in HRS chapter 103D does not apply to HRS chapter 103F. However, HRS § 103F–104 only bars the application of the provisions of HRS chapter 103D. There is no language in HRS chapter 103F otherwise prohibiting judicial review. As explained *supra,* judicial review under HRS § 632–1 is allowed.

103F, as construed, does not prohibit judicial review through HRS § 632–1, as discussed *supra. See Alaka'i II*, 127 Haw. at 284, 277 P.3d at 1009.

## XI.

In conclusion, as to Petitioner's first question, HRS chapter 103F does not allow for review by the DCCA and by the circuit court pursuant to HRS chapter 103D. As to the second question, HRS chapter 103F does not violate the separation of powers doctrine because the chapter, as construed, does not prohibit judicial review under the declaratory judgment statute, HRS § 632–1. As to the third question, there is no due process or equal protection violation since HRS chapter 103F, as interpreted, allows for judicial review.

## XII.

For the foregoing reasons, we vacate the August 12, 2011 judgment of the ICA and the January 8, 2009 judgment of the court. We remand this case to the court for further proceedings in accordance with this opinion.[28]

Opinion by RECKTENWALD, C.J., concurring in part and dissenting in part, in which NAKAYAMA, J., Joins.

I concur in the majority's conclusion that AlohaCare cannot seek review of its Hawai'i Revised Statutes (HRS) chapter 103F procurement protest pursuant to HRS chapter 103D. Majority opinion at 653–54. I also concur in the majority's conclusion that AlohaCare does not have a property interest in the contract at issue that implicates due process protections. Majority opinion at 658.

However, for the reasons set forth in my concurring and dissenting opinion in *Alaka'i Na Keiki, Inc. v. Matayoshi*, 127 Hawai'i 263, 277 P.3d 988 (2012) (Recktenwald, C.J., concurring in part and dissenting in part), I respectfully dissent from the majority's conclusion that agency decisions on protests regarding the procurement of health and human services are reviewable pursuant to the declaratory judgment statute, HRS § 632–1.[1] Majority opinion at 658. Instead, I would hold that the legislature clearly intended to preclude judicial review of these protest decisions under the health and human services procurement code, HRS chapter 103F. I would further hold that preclusion of judicial review does not raise separation of powers concerns in the circumstances presented here. Because the legislature has the power to establish the jurisdiction of the courts, *see* Haw. Const. art. VI, § 1 ("The several courts shall have original and appellate jurisdiction as provided by law[.]"), the legislature may, with certain limitations described in my concurring and dissenting opinion in *Alaka'i*, exclude agency decisions from judicial review.

Finally, I note that the majority's conclusion that protest decisions are reviewable under the declaratory judgment statute undermines this court's caselaw concerning HRS § 91–14, which generally limits judicial review of administrative agency action to decisions and orders in contested cases, unless review is otherwise provided by law. Additionally, this conclusion will introduce uncertainty into the procurement of health and human services contracts. In order to promote the prompt and final resolution of disputes involving the procurement of those contracts, HRS chapter 103F provides that a protest must be filed within five working days, and a request for reconsideration must be filed within five working days of the written protest decision. HRS §§ 103F–501 and 103F–502. However, under the majority's approach, procurement decisions will now be subject to challenge much later under the more generous statutes of limitations applicable to declaratory judgment actions.

Accordingly, I respectfully dissent. Instead, I would affirm the judgment of the Intermediate Court of Appeals, which af-

---

28. As noted *supra,* the record does not reflect whether the contracts at issue have been completed. If so, the request for judicial review of Respondent's disposition of Petitioner's protest may be moot.

1. I also dissent from the majority's conclusion that there appears to be no rational basis for precluding judicial review of AlohaCare's pro-

curement protest. Majority opinion at 658. As explained in my concurring and dissenting opinion in *Alaka'i,* the legislature intended that the procurement process under HRS chapter 103F be simple and efficient, H. Stand. Comm. Rep. No. 940, in 1997 House Journal, at 1461, which provides a rational basis for precluding judicial review in these circumstances.

firmed the Circuit Court of the First Circuit's January 8, 2009 judgment and order dismissing AlohaCare's appeal for lack of jurisdiction.